**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**CAPITAL EQUIPMENT, INC.,**                                                    **PLAINTIFFS**
**an Arkansas Corporation; TEXAS
TIMBERJACK, INC., a Texas Corporation;
and NOBLE EQUIPMENT, LLC, A Nevada
Limited Liability Company**

**v.**                             **NO. 4:04-CV-00381 GTE**

**CNH AMERICA, LLC, Successor in Interest to
NEW HOLLAND NORTH AMERICA, INC.,
a Delaware Corporation, d/b/a
NEW HOLLAND CONSTRUCTION**                             **DEFENDANT**

## ORDER DENYING PARTIAL SUMMARY JUDGMENT

Before the Court is a Motion for Partial Summary Judgment filed by Plaintiffs Capital Equipment, Inc. and Noble Equipment, LLC, (collectively, the "Dealers"), to which the Defendant CNH America, LLC (hereinafter referred to as "New Holland") has responded. The Plaintiff Dealers contend that they are entitled to judgment as a matter of law with regard to their breach of contract claim. Following a review of the entire summary judgment record, the Court concludes that Plaintiffs' motion must be denied.

### OVERVIEW OF ISSUE

Plaintiffs, in their breach of contract claim, contend that New Holland breached the Dealer Agreement by selling equipment through an auction house, Ritchie Brothers. Plaintiffs contend that the contract only permitted "direct sales" of New Holland equipment and that the auction sales were not "direct sales." Defendant New Holland Construction contends that its sales of equipment by auction were permissible and did not violate the Dealer Agreements.

## FACTS WITHOUT MATERIAL CONTROVERSY

Plaintiff are two former dealers of New Holland Construction Equipment. Plaintiff Capital Equipment, Inc. ("Capital") is located in Sherwood, Arkansas. Plaintiff Noble Equipment, LLC ("Noble") is located in North Las Vegas, Nevada.[1] Defendant New Holland is a manufacturer of construction equipment which distributes its products primarily through an established network of dealers across the United States.

The Dealers executed written Dealership Agreements with New Holland. The Dealer Agreements appointed each dealer as an authorized non-exclusive reseller of New Holland Construction equipment in a given geographic territory.[2] The Dealership Agreements contain identical provisions relative to the present dispute.

New Holland entered into a contract with a third party, a national auction house known as Ritchie Brothers, in order to sell its Product to end users at auction. Ritchie Brothers was not a "dealer" of New Holland's Product. Ritchie Brothers did not purchase from New Holland the Product that it sold at auction. These auctions were conducted by Ritchie Brothers at various locations across the country, including: Jacksonville, Florida (8/16/01); Kansas City, Missouri (8/28/01); Lakeworth, Texas (9/19/01); Houston, Texas (10/9/01); Ocala, Florida (11/8/01); Salt Lake City, Utah (11/14/01); Cleveland, Ohio (11/16/01); Houston, Texas (11/28/01); Phoenix, Arizona (11/27/01); Lakeville/Minneapolis, Minnesota (11/30/01); Kansas City, Missouri (12/14/01); Baltimore, Maryland (12/19/01);   Phoenix, Arizona (2/26/02); and Morris, Illinois

---

[1] The Complaint initially included a third dealer Plaintiff, Texas Timberjack, Inc., located in Lufkin, Texas. Texas Timberjack settled its dispute with the Defendant and is no longer a party to this lawsuit.

[2] As New Holland points out, the contract did not place any limitations on where the dealers could sell New Holland equipment.

(11/20/02).

Richie Brothers earned a percentage commission based upon the dollar amount of New Holland product it sold.

## DISCUSSION

Plaintiffs contend that by utilizing Ritchie Brothers to liquidate its inventory of equipment, New Holland circumvented its dealer network, established Ritchie Brothers as a quasi-dealer, and ultimately set cut-rate auction prices as the going rate for New Holland equipment.  New Holland denies that the auctions harmed the Plantiffs in any way, pointing out that only 292 pieces of equipment were sold during these fifteen auctions.  New Holland further points out that none of the items auctioned were purchased by any customer in the state of Arkansas, where Capital does business, and only one item was purchased by a customer in Nevada, where Noble does business.   Thus, New Holland denies that the auctions caused any demonstrable harm.

The Court need not resolve at this juncture the issue of whether the auctions harmed the Plaintiff Dealers.   Rather, the narrow issue before this Court is whether New Holland's act of using Ritchie Brothers to sell equipment at auction violates the Dealership Agreement. Plaintiffs argue that the issue is one of law for the Court based the contract language in paragraph 4(f) of the Dealership Agreement.  In Plaintiffs' view, this language is clear and unambiguous, and entitles them to prevail as a matter of law.  A contract is unambiguous and its construction and legal effect are questions of law when its terms are not susceptible to more than one equally reasonable construction.  *Boatmen's Arkansas, Inc. v. Farmer,* 66 Ark.App. 240, 989 S.W.2d 557 (1999).

Two contractual provisions, in particular, are relevant.

- 3 -

> Paragraph 4(f) of the Dealership Agreement provides:
>
> New Holland Construction reserves the right to sell rent or lease PRODUCT directly to end users within the Dealer's PMR or elsewhere including but not limited to governmental agencies, institutions or entities, educational or charitable institutions, rental companies and accounts classified by New Holland Construction as national accounts. New Holland Construction shall have no liability for any sales made pursuant to Paragraph 4(f).
>
> Paragraph 18(b) of the Dealership Agreement provides:
>
> New Holland Construction may make gifts, sales, loans, rentals or leases of PRODUCTS to others within the Dealer's PMR or otherwise without liability to the Dealer. New Holland Construction also may offer any PRODUCTS including new, different and differently designed product, bearing any trademarks or trade names to which New Holland Construction or any affiliated company is entitled, to selected Dealers or others under existing or new agreements without any liability to the Dealer.

(Exhibits 4 and 5 to Def.'s Response, Exhibit 48).

Plaintiffs, relying on paragraph 4(f), contend that New Holland's use of an auction house to sell product to end users violated the contract. It is undisputed that New Holland sold equipment to end users, a right reserved by New Holland in the contract. Plaintiffs contend that it is the method of sale, via a third-party auctioneer, which makes the sale "indirect" and violates the contract.

In response, New Holland argues that the sales were permitted by both paragraphs 4(f) and 18(b). As New Holland points out, paragraph 4(f) is not limited to the cited examples of end users to whom New Holland may sell product (without selling through dealers). In paragraph 4(f), New Holland "reserves the right to sell rent or lease product directly to end users . . <u>including but not limited to</u>" the cited examples. The provision does not specifically prohibit sales to end users via auction houses.

While paragraph 18(b) on its face appears to permit sales of any kind by New Holland, the Dealers argue that this provision must be read as permitting only direct sales. To support this

construction, the Dealers argue that otherwise paragraph 4(f) will be rendered superfluous.

The Court cannot conclude as a matter of law that Paragraph 18, upon which New Holland also relies, must be interpreted as restricted to direct sales, as it must for the auction sales challenged by Plaintiff to be deemed in breach of contract.

"In considering the different clauses of a contract, [the court] must read the whole document together and determine whether all parts are in harmony.  If possible [the court] give[s] effect to the overall meaning of the contract.  It is error to give effect to one clause over another on the same subject if the two clauses are reconcilable." *Travelers Indem. Co. v. Olive's Sporting Goods, Inc*. 764 S.W.2d 596, 599 (Ark. 1989).  The construction urged by the Dealers is arguably contrary to the agreement's intent as a whole.

In reviewing the entire contract, the Court can find no other intent to preserve the purported dichotomy between direct and indirect sales.  Rather, it appears that the contractual intent was to preserve New Holland's right to sell product wherever and however it could without any liability to its existing Dealers.  The Dealers paid no fee for the agreement and their appointment was non-exclusive.  Paragraph 18(a) permitted New Holland to appoint additional Dealers within the Dealer's PMR[3] or to alter the Dealer's PMR.  Thus, the contract would have permitted New Holland to appoint Ritchie Brothers as a dealer.  The emphasis on restricting "indirect" sales seems misplaced in view of the contract as a whole.

What then is the intent of inserting the word "directly" when preserving New Holland's right to sell to end users?  Perhaps the intent is to emphasize New Holland's right to sell product directly to end users, not because the contract restricts it from selling product indirectly, but

---

[3] PMR stands for "Primary Market of Responsibility."  The term is used as a tool to measure the Dealer's sales performance, is non-exclusive, and "is the volume of a product line sold within a geographic area, not the area itself."

because it is understood that it may sell product indirectly.  This interpretation would be equally plausible, in keeping with the contract, and more consistent with the contract as a whole.

In any event, the Court concludes that the contract language is not so clear and unambiguous that it may rule as a matter of law at this time.

## CONCLUSION

For the reasons herein stated,

IT IS THEREFORE ORDERED THAT Plaintiffs Capital Equipment, Inc. and Noble Equipment, LLC's Motion for Partial Summary Judgment (Docket No. 40) be, and it is hereby DENIED.

IT IS SO ORDERED this 6th day of January, 2006.

    __/s/Garnett Thomas Eisele_____
    UNITED STATES DISTRICT COURT