**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **CAPITAL EQUIPMENT, INC.,** an Arkansas Corporation; **TEXAS TIMBERJACK, INC.,** a Texas Corporation; and **NOBLE EQUIPMENT, LLC,** A Nevada Limited Liability Company | **PLAINTIFFS** |
| v.  NO. 4:04-CV-00381 GET | |
| **CNH AMERICA, LLC,** Successor in Interest to **NEW HOLLAND NORTH AMERICA, INC.,** a Delaware Corporation, d/b/a **NEW HOLLAND CONSTRUCTION** | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT
AS TO NOBLE EQUIPMENT, LLC**

Before the Court is a Motion for Summary Judgment filed by Defendant CNH America, LLC d/b/a New Holland Construction (hereinafter referred to as "NHC"), against Plaintiff Noble Equipment, LLC ("Noble"). Noble has responded to the motion. Following a review of the entire summary judgment record, the Court concludes that Defendant's motion must be granted in part and denied in part. The motion is granted with respect to Noble's claims of tortuous interference with business advantage; violation of the Uniform Commercial Code in connection with open price terms; promissory estoppel; and violation of the Robinson-Patman Act. As to all of these claims, Noble conceded summary judgment. The motion is also granted, over Noble's objection, with respect to its claims for violation of the Utah Consumer Sales Practices Act and the Nevada Deceptive Trade Practices Act. The motion is denied with respect to Noble's remaining claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

- 1 -

**BACKGROUND AND FACTUAL OVERVIEW**

On Friday, April 28, 2006, the Court issued its Memorandum Opinion and Order related to NHC's Motion for Summary Judgment against Plaintiff Capital Equipment, Inc. (Docket No. 120). The Memorandum Opinion and Order is hereby incorporated by reference to the extent that it applies to Noble's claims against NHC

Capital and Noble share important differences as well as important similarities. They are similar in that they both signed virtually identical Dealer Agreements with NHC  Like Capital, Noble claims that it was unable to be successful as an NHC dealer due to NHC's auction sales, market builder program, and the poor quality of the equipment.  Their contractual relationship ended differently.  Noble failed to maintain a credit line as required by the contract and sold equipment out of trust, for which NHC terminated the relationship.  There are no allegations that Capital breached its Dealer Agreement, and Capital, rather than NHC, initiated termination of the relationship. The Plaintiffs also seek different measures of damages.  Capital seeks to recover the lost profits it claims it would have earned as a result of continuing to operate its NHC dealership.  Noble, on the other hand, seeks a reliance measure of damages.

In December of 2000, Noble became a dealer of NHC construction equipment.  Noble's principal dealer location was in Las Vegas, Nevada.  Its sales territory included parts of Nevada and also extended into parts of Utah.  Under the terms of the parties written agreement, Noble carried a full line of NHC construction equipment including industrial tractors, skid-steer loaders, dozers, excavators, and other related implements.

Noble and NHC entered into a written Dealer Agreement.  Paragraphs 15 and 22(d)(x) of the Agreement required Noble to maintain a wholesale line of credit and provided that failure to do so would be a basis to terminate the Agreement.  Noble's wholesale line of credit was

suspended on September 30, 2002. NHC gave Noble written notice on December 2, 2003 of the requirement that it obtain a wholesale line of credit by January 31, 2004 or face termination. On February 2, 2004, NHC gave Noble written notice that the Dealer Agreement was being terminated effective March 5, 2004 for failure to obtain a wholesale line of credit.

Additionally, Bud Noble sold approximately $346,000 worth of NHC equipment out of trust in violation of the NHC Dealer Agreement. Selling out of trust is also a basis to terminate the Dealer Agreement.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## DISCUSSION

### I. NOBLE'S BREACH OF CONTRACT CLAIM

#### A. Auction Sales

For the same reason the Court declined to rule in NHC's favor on Capital's breach of contract claim, the Court likewise declines to rule in NHC's favor on Nobles' breach of contract claim. The Court cannot determine as a matter of law that such auction sales failed to breach the

parties' written agreement.

The Court recognizes that it must apply Nevada law to Noble's contract claim and Arkansas law to Capital's contract claim. Nevada contract law is arguably broader than Arkansas contract law.[1]

Noble's reliance on *Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792, 796 (Nev. 2004), a case which discusses a negligent misrepresentation claim and fails to mention an implied contract claim, appears misplaced.

Noble additionally claims that it may recover for NHC's conduct in causing it to be overstocked. Noble contends this was a breach, apparently independently of its claim that the auction sales were a breach. If, at trial, it turns out that the auction sales were contractually permitted – *i.e.*, that such sales were neither a violation of the express contract terms nor implied in the contract – does the Court properly understand that Noble still intends to pursue a separate contract claim based on the theory that NHC caused it to be overstocked and that this may be found by the jury to be a breach of the contract if it finds that such was an implied term of the parties' agreement?[2] Or, does Noble only intend to pursue such claim as an alleged breach of the implied covenant of good faith and fair dealing claim?

The Nevada Supreme Court has clearly delineated between contract theories for breach of express contract terms versus implied contract terms, *to-wit*:

---

[1] Perhaps it would be more accurate to state that Nevada courts have more thoroughly and consistently explicated this area of the law. It may not be that the laws of the two states are materially different in their application. The Court invites the parties to comment on any material differences in the laws of the two states.

[2] If so, is Noble's theory that NHC's actions contributed directly to Noble being overstocked, and thus, its inability to maintain a wholesale credit line for which it was ultimately terminated?

- 4 -

> Although some courts still follow traditional bargain theory and refuse to delve beyond the express terms of a written contract, the better approach is for the courts to examine the circumstances surrounding the parties' agreement in order to determine the true mutual intentions of the parties. . . .
>
> When the trial court instructed the jury in effect that it could, if it chose, go beyond the written language in the contract and find that the parties had in fact impliedly agreed [to a contract term that was not specified in the contract], the court was as much as telling the jury that it was not bound strictly by the written terms of the contract and that it could in this case give credence to the true understandings and intentions and "justified expectation" of the parties.

*Hilton Hotels Corporation v. Butch Lewis Productions, Inc.*, 107 Nev. 226, 231-32, 808 P.2d 919, 921-22 (Nev. 2004).

If the evidence at trial proves to be as described by Noble, the jury could find that the mutual intent of the parties was to preserve for NHC the right to sell equipment as stated in the contract, for example, through other dealers and national accounts, but not through auction sales. The record summary judgment evidence would appear to permit a jury finding that NHC's actions breached an implied contract term.

It further appears that even if Noble fails to prove that NHC breached the contract (either expressly or impliedly), it may be able to recover damages in contract for breach of the implied covenant of good faith and fair dealing.[3]  As the Nevada Supreme Court has held:

> "Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing."

---

[3] It does not appear to the Court that Noble is attempting or intends to assert a <u>tort</u> claim for breach of the implied covenant of good faith and fair dealing. If it does, it shall notify the Court immediately of that fact. NHC accurately notes the limited circumstances in which Nevada permits such tort-based claims. *See Great American Ins. Co. v. General Builders, Inc.*, 113 Nev. 346, 355-56, 934 P.2d 257, 263 (1977). Such a claim would not appear to be viable in this case.

- 5 -

*Hilton Hotels Corporation*, 107 Nev. at 232, 808 P.2d at 922-23.[4]

Noble is directed to answer all of the questions posed herein and to more specifically delineate its contractual breach theories in a trial brief to be submitted to the Court not later than May 10, 2006. NHC is also directed to file a trial brief commenting on these issues. Both parties are directed to address in their trial briefs the legal and evidentiary issues likely to arise at trial.

### B.      Effect of the Dealer Agreement's Limitation of Damages

Assuming Noble prevails on either of its claims for breach of contract or for breach of the implied covenant of good faith and fair dealing, what effect, if any, does the contractual limitation of damages provision have on its recovery?

NHC's argues that its liability is limited as a matter of law to those damages suffered between the date of the notice of termination and the effective termination of Capital's dealership. The Dealership Agreement contains a "limitation of liability" provision, which states in pertinent part:

> This Agreement contemplates that the Dealer, as an independent business, shall purchase PRODUCTS for resale in conformity with the provisions of this Agreement, and shall obtain on its own the capital investment necessary to operate the business. **Nothing in this Agreement shall impose any liability on New Holland Construction in connection with the Dealer's operations under this Agreement or otherwise, or for any expenditure made or incurred by the Dealer in preparation for performance or in performance of the Dealer's responsibilities under this Agreement**.

---

[4] Arkansas law also arguably permits an independent contractual claim for breach of the implied duty of good faith where the breaching party does something to prevent, hinder, or delay the performance of the contract, so long as the theory of breach would not have obligated the breaching party to take action contrary to the express provisions of the contract. See AMI 2426 (2006). *Country Corner Food and Drug, Inc. v. First State Bank and Trust Company of Conway, Ark.*, 332 Ark. 645, 966 S.W.2d 894 (1998), stands for the proposition that the implied duty of good faith inherent in every contract does not permit an independent tort action for its breach. Throughout this action, the Court has assumed that the Plaintiffs were not bringing breach of contract claims for the implied duty of good faith independently from their breach of contract claim for auction sales. It now appears that such may in fact be their intent.

> The Dealer and New Holland Construction both understand and agree that this Agreement is of a limited duration, and therefore, except as provided herein, neither party is entitled to any compensation or reimbursement for loss of prospective profits, anticipated sales or other losses occasioned by expiration, cancellation, non-renewal or termination. More specifically, the damages to which either party may be entitled are limited to those which occur, or which are incurred, during the period of time between notice of cancellation, non-renewal or termination and the effective date thereof.

(Dealer Agreement, at ¶ 27).

The Dealer Agreement is also limited in duration to successive one-year terms and permits either party to terminate the Agreement, with or without cause, with 90 days' notice. (Dealer Agreement, at ¶¶ 21-22).

NHC argues that the contract precludes out-of-pocket damages and other theories of recovery akin to recoupment. Noble argues that the above provision, which must be construed narrowly and strictly against NHC, does not prevent Noble from recovering for NHC's breach of contract. The Court is inclined to agree. The purpose of the provision appears to be to acknowledge that Noble will be required to make a capital investment in order to perform the contract. While the parties agree that "nothing in this agreement" shall impose liability on New Holland in connection with those expenditures, the agreement does not provide that New Holland cannot be held liable for any damages for its own failure to perform under the agreement.

Finally, NHC argues strenuously in its reply brief that Nevada law would not permit Noble's claim of out-of-pocket damages and goes to great lengths to distinguish the cases relied upon by Noble. NHC points out that two of the cases relied upon by Noble[5] which approved the recovery of out of pocket losses were fraud cases and not contract cases. Thus, NHC argues that because Noble has not alleged fraud, out of pocket damages are inappropriate.

---

[5] *Collins v. Burns*, 741 P.2d 819 (Nev. 1987); *Fallon Min. Co., Inc. v. Caddell*, 77 Fed. Appx. 416, 418 (9th Cir. 2003).

Perhaps Noble has not been able to locate a Nevada case specifically approving a reliance measure of damages. However, as a general proposition reliance damages are normally permitted as an alternative to the usual expectancy measure of damages for contract breach. The Restatement 2d of Contracts describes such damages as follows:

> As an alternative to the measure of damages stated in § 347, the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed.

Restatement 2d Contracts § 349.

There may well be issues in this case regarding what the appropriate measure of reliance damages should be, particularly given the allegations of wrongdoing on the part of Bud Noble, who is accused of selling equipment out of trust and other mismanagement. However, at this stage, the Court cannot hold as a matter of law that regardless of whether Noble proves a contract breach, it cannot prove or recover any damages.

## II.   NOBLE'S CLAIM UNDER THE UTAH CONSUMER SALES PRACTICES ACT

Noble alleges that NHC's conduct of selling product through the auctions deprived Noble of the alleged benefits under the Dealer Agreement and caused Noble's equipment to depreciate demonstrably, all in violation of the Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 *et seq*. ("UCSPA"). (Amended Complaint at ¶¶ 196-198).

The Court must first determine whether the Utah statute applies in light of the contractual agreement to apply the law of Nevada. Paragraph 35 of the Dealer Agreement provides:

> This Agreement shall be governed by and interpreted in accordance with the laws of the state in which the PRINCIPAL DEALER LOCATION is situated, without regard to such state's choice of law rules or principles.

The Dealer Agreement identifies the Principal Dealer Location as being in North Las Vegas,

- 8 -

Nevada. Noble is also a Nevada resident. Additionally, at no time did Noble have a physical location in Utah. Rather, its sole basis for invoking the protection of Utah law is the fact that approximately half of its sales territory was located in Utah.

To the extent that Noble's claims require an interpretation of the Dealer Agreement, the Court agrees that the law of Nevada controls by virtue of the parties' agreement. Noble's claims necessarily require an interpretation of the Dealer Agreement. Indeed, Noble itself asserts that its "primary contention is that the auctions were in violation of the language of the Dealership Agreement as augmented by New Holland's contract in law obligations." (Noble's response at p. 10). The Court holds that Nevada law governs this dispute. Accordingly, Utah's Consumer Sales Practices Act does not apply.

Additionally and alternatively, regardless of the contractual choice-of-law provision, the Court holds that the UCSPA is inapplicable here. Noble argues that the UCSPA is to be construed liberally "to protect consumers from suppliers who commit deceptive and unconscionable sales practices . . ." Utah Code Ann. § 13-11-2. This may be true. But, Noble is not a Utah consumer, but rather, a Nevada supplier who sold equipment to some Utah consumers (none of whom are complaining).

Noble's reliance on *Wilkinson v. B & H Auto*, 701 F.Supp. 201, 204 (D. Utah 1998), is misplaced. The *Wilkinson* court found that the UCSPA was broad enough to impose liability on a supplier of motor vehicles who allegedly sold automobiles with fraudulent odometer readings to independent dealers for resale, who in turn sold them to the consumer plaintiffs. The decision is important because it rejected the supplier's argument that it was insulated from liability because it did not sell the vehicles directly to consumers and thus, rejected a privity requirement for the statute's applicability. As the *Wilkinson* court stated, the UCSPA "is broad enough to

impose liability upon suppliers of consumer goods who deceptively transact with other suppliers." *Id.*, at 205.

Here, there is no privity issue.  NHC clearly sold the equipment to Noble, who in turn sold it or attempted to sell it to customers, some of whom were located in Utah.  Noble has not invoked the UCSPA to ensure the protection of Noble's customers located in Utah, but rather for its own protection.  The Court concludes that Noble is not a Utah consumer for whose protection the UCSPA was enacted.

Finally, even assuming the UCSPA were deemed applicable, the parties dispute whether NHC's ongoing sale of goods to Noble could be considered a "consumer transaction" within the coverage of the UCSPA.  If the Court were called upon to decide this issue, it would hold that these are not covered transactions because Noble is not a person who was required to perform personal services on a continuing basis who "**had not been previously engaged**" in performing such services.  Utah Code Ann. § 13-11-3(2)(a)(ii)(B)(emphasis added).  The UCSPA was designed to provide protection for consumers.  It was not designed to provide protection for ongoing commercial transactions between sophisticated business entities.

Noble's claim for violation of the UCSPA will be dismissed as a matter of law.

### III.   NOBLE'S CLAIMS UNDER THE NEVADA DECEPTIVE TRADE PRACTICES ACT

Noble relies solely on § 598.0923 for its claim under the Nevada Trade Practices Act ("NTPA").  That section provides that "a person engages in a 'deceptive trade practice' when in the course of his business or occupation he knowingly: . . . 3. Violates a state or federal statute or regulation relating to the sale or lease of goods or services."  Noble contends that NHC's violation of the UCSPA may be used to permit the recovery of damages under the NTPA.

Because the UCSPA claim has been dismissed as a matter of law, Noble's NTPA claim

must be dismissed as well.

## CONCLUSION

For the reasons herein stated,

IT IS THEREFORE ORDERED THAT Defendant New Holland Construction's Motion for Summary Judgment Against Plaintiff Noble, Inc. (Docket No. 88) be, and it is hereby GRANTED IN PART AND DENIED IN PART, for the reasons herein stated.  Noble's claims for violation of tortuous interference with business advantage; violation of the Uniform Commercial Code in connection with open price terms; promissory estoppel; violation of the Robinson-Patman Act;  violation of the Utah Consumer Sales Practices Act, and violation of the Nevada Deceptive Trade Practices Act are hereby DISMISSED.  Noble may proceed to trial on its remaining claims for breach of contract and the implied covenant of good faith and fair dealing.

IT IS FURTHER ORDERED THAT the parties shall file trial briefs not later than 2:00 p.m. on **May 10, 2006**, addressing any legal or evidentiary issues regarding Noble's remaining claims likely to arise at trial.  Response briefs may be filed not later than 2:00 p.m. on Friday, **May 12, 2006.**

IT IS SO ORDERED this   4th   day of May, 2006.

>             _____/s/Garnett Thomas Eisele_____
>              UNITED STATES DISTRICT COURT